DAVID E. OGLESBY v. EDWARD G. McCOY, DIRECTOR OF THE MARINE FISHERIES OF THE NORTH CAROLINA DEPARTMENT OF NATURAL AND ECONOMIC RESOURCES; AND HOWARD LEE, SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF NATURAL AND ECONOMIC RESOURCES

No. 783SC855

(Filed 19 June 1979)

Constitutional Law § 25.1; State § 2.1— lease of oyster bottoms—amount of rent—increase after second renewal proper

> Since plaintiff and the State, parties to a lease of oyster bottoms, clearly did not intend to create a perpetual lease, a third renewal of the lease was within the discretion of the State, and the requested increase in the rental fee, pursuant to G.S. 113-202(j), after the first renewal term had ended, was constitutionally permissible and did not impair the State's obligation of its lease contract with plaintiff.

APPEAL by plaintiff from *Tillery, Judge.* Order dated 25 July 1978 and filed 10 August 1978 in Superior Court, CARTERET County. Heard in the Court of Appeals 29 May 1979.

Plaintiff's predecessors entered into a lease with defendants' predecessors on 1 July 1942. The lease was for eight acres of bottoms used for cultivating oysters in the Newport River, Carteret County. The lease provided in pertinent part as follows:

> TO HAVE AND TO HOLD the said above described bottoms, and the privileges and appurtenances thereto appertaining, to him, the said party of the second part, and his heirs and assigns, for the period of twenty years from the 1st day of April, 1942, and no longer (with the right of renewal as set forth in the statute regulating the leasing of Oyster and Clam bottoms), upon the following terms and conditions, to-wit: That the said party of the second part shall pay annually, in advance, on or before April 1st of each and every year the sum of Fifty Cents per acre for and during the first ten years, from April 1st, 1942, and One dollar per acre for the next succeeding ten years. That the said party of the second part shall keep the said bottoms properly staked as required by law and shall plant and cultivate the same as the law prescribes, and he shall comply with all the conditions and requirements set forth in Consolidated Statutes, Sections 1903-1912, inclusive, providing for the leasing of Oyster and Clam bottoms.

At the time the lease was executed, Section 1910 of the Consolidated Statutes provided in pertinent part as follows:

> The term of each lease granted under the provisions of this Article shall be for a period of 20 years from the first day of April preceding the date of granting of said lease. At the expiration of the first lease, the Lessee, upon making written application on the prescribed form, shall be entitled to successive leases on the same terms as applied to the last 10 years of the first lease for a period not exceeding 10 years each.

Plaintiff's complaint alleged that the lease was renewed pursuant to the statute in 1952 and 1962 and that annual rental pursuant to the lease was paid to defendants through 1975. Further,

plaintiff alleged that defendants refused to accept the rent tendered for 1976 and that defendants then tendered to plaintiff a renewal lease for the period beginning 1 April 1972 and continuing for a period of 10 years at an increased rental of $5 per acre. Plaintiff was advised by defendants that the new lease must be executed or action would be taken to terminate the leasehold.

Defendants alleged that the Division of Marine Fisheries of the Department of Natural and Economic Resources mistakenly accepted payments of $1 per acre per year from the plaintiff for the years 1972 through 1975 and that the action of the Division of Marine Fisheries in refusing to accept the $1 per acre rental in 1976 was in accordance with G.S. 113-202(j) which provides in pertinent part as follows:

> (j) Initial leases begin upon the issuance of the lease by the Secretary and expire at noon on the first day of April following the tenth anniversary of the granting of the lease. Renewal leases are issued for a period of 10 years effective from the time of expiration of the previous lease. The rental for initial leases is one dollar ($1.00) per acre for all leases entered into before July 1, 1965, and for all other leases until noon on the first day of April following the first anniversary of the lease. Thereafter, for initial leases entered into after July 1, 1965, and from the beginning for renewals of leases entered into after said date, the rental is five dollars ($5.00) per acre per year. Rental must be paid annually in advance prior to the first day of April each year. Upon initial granting of a lease, the pro rata amount for the portion of the year left until the first day of April must be paid in advance at the rate of one dollar ($1.00) per acre per year; then, on or before the first day of April next, the lessee must pay the rental for the next full year.

The statute quoted above was enacted in 1967 and plaintiff alleges that it purports to subject renewals of leases on terms that differ from the original terms and which increase the rental from $1 per acre to $5 per acre. Plaintiff contends that the act is unconstitutional and that he is entitled to have his rights, status and legal relationships declared by the court. Plaintiff prayed that the court restrain the defendants from entering upon the leased premises pending a determination of the rights of the par-

ties, that the court declare that the lease of the plaintiff should exist pursuant to its terms and unaffected by G.S. 113-202(j) and that the rental to be paid by plaintiff to defendants continue to be in the sum of $1 per acre per year. Plaintiff further prayed that the quoted statute be declared unconstitutional insofar as it attempts to affect the lease of the plaintiff.

Pursuant to G.S. 1A-1, Rule 12(c), defendants moved that judgment be entered for them on the pleadings on the ground that undisputed facts entitled them to judgment as a matter of law. The trial court found that the predecessor statutes to G.S. 113-202(j) did not operate to give plaintiffs a right to perpetual renewals for the same rental fee as the original term. The court further found that G.S. 113-202, as it relates to increasing the rental charge to $5 per acre per year for renewal leases of oyster and clam bottoms entered into after 1 July 1965, is constitutional in its application to the lease in question. The trial court granted defendants' motion for judgment on the pleadings and plaintiff appeals.

*Bennett, McConkey & Thompson, by Thomas S. Bennett, for plaintiff appellant.*

*Attorney General Edmisten, by Special Deputy Attorney General W. A. Raney, Jr. and Assistant Attorney General Daniel C. Oakley, for defendants appellee.*

CARLTON, Judge.

The primary question for determination is whether the legislature, in enacting G.S. 113-202(j) in 1967, violated the constitutional prohibition of statutes impairing the obligation of contracts. We hold that it did not.

> Contracts to which a state is a party are within the constitutional prohibition against the impairment of the obligation of contracts. An act of a legislature may be an obligation of the state within the constitutional prohibition, and whatever rights are created by such act a subsequent legislature cannot impair. It is a well established principle that a contract to which a state, or a subdivision thereof is a party is as much within the constitutional prohibition of statutes impairing the obligation of contracts as a contract between individuals, par-

ticularly with respect to contracts previously entered into by the state in its proprietary capacity. 16 C.J.S., Constitutional Law, § 285, p. 1301.

Clearly, under the stated rule, the passage of G.S. 113-202(j) in 1967 would violate the constitutional prohibition of statutes impairing the obligation of contracts, as applied to the lease in question, if the legislature had intended for the statute to apply to leases which had not expired or which had been properly renewed pursuant to the terms of the lease. Such, however, is not the situation in the case at bar.

At the time the tendered new lease was submitted to plaintiff in 1976, the original lease had not been renewed since 1962. Pursuant to the terms of the lease, therefore, the lease had expired in 1972. Plaintiff argues, however, that the terms of the lease effectively gave him a perpetual lease and that the State was bound to renew it every 10 years at his request; therefore, the 1967 statute impaired the obligation of his continuing contract with the State. We do not believe this to be the prevailing law.

We adopt the majority view that the law does not favor perpetual leases and that the intention to create one must appear in clear and unequivocal language, and accordingly, a lease will not be construed to create a right to perpetual renewal unless the language employed indicates clearly and unambiguously that it was the intention and purpose of the parties to do so. *See* 50 Am. Jr. 2d, Landlord and Tenant, § 1171, p. 56. Moreover, leases providing for successive renewals, without other qualifying language, will be construed as providing for but one renewal. 31 A.L.R. 2d 607. The latter rule is based on the principle that courts do not favor perpetuities, and unless the lease, expressly or by clear implication, provides that the second lease shall contain a covenant for future renewals, it will be construed as providing for but a single renewal.

Applying the stated rules to the facts disclosed by the record, we think the parties clearly did not intend a perpetual lease in light of the language of the lease and the circumstances surrounding the transaction. The 1942 lease provided for a period of 20 years "with the right of renewal as set forth in the statute requiring the leasing of Oyster and Clam bottoms." By referring

to the statute in the renewal clause in the lease, the parties anticipated that statutory changes would be operative on the right to renewal.

Moreover, nowhere in the instrument do we find any language indicating an instrument in perpetuity. In light of the State's vested interest in oyster and clam bottoms, we think our legislative and executive branches of government would have used appropriate and apt words to create a perpetual lease had such been intended. *See Geyer v. Lietzan*, 230 Ind. 404, 103 N.E. 2d 199 (1952). Since neither the statute nor the lease employed clear and unambiguous language indicating an intent to create a lease in perpetuity, we hold that such was not the intent of the parties. Renewal of the lease in question in 1972 was therefore in the discretion of the State and must be in compliance with G.S. 113-202(j) requiring a $5 per acre per year rental fee for "renewals of leases entered into after said date [1 July 1965]." Put another way, the requested increase in the rental fee, pursuant to statutory authorization, after the first renewal term had ended, was constitutionally permissible.

Plaintiff contends that the case at bar is completely controlled by a former decision of our Supreme Court in *Oglesby v. Adams*, 268 N.C. 272, 150 S.E. 2d 383 (1966). There, plaintiff entered into an oyster bottom lease in 1953 with the State for a 20 year period with rights to renewal similar to the lease in question here. The rental fee was $1 per acre per year and plaintiff's tender of rent at that rate prior to 1 April 1965 was refused by the State under the authority of a statute enacted by the legislature in 1965 increasing the rental fee to $5 per acre per year. Our Supreme Court held that the statute violated the rights conferred upon the plaintiff by the lease, citing the constitutional prohibition of statutes impairing the obligation of contracts.

Our decision is not in conflict with that decision of our Supreme Court. There, the initial 20-year lease had not expired and the act of the legislature attempted to increase the rental fee during the term of an expiring lease. Here, in light of the rule enunciated above, no lease was existing at the time the State attempted to increase the rental fee in 1976.

We note finally that our legislature amended the 1965 statute following the *Oglesby* decision in 1966. It is obvious from a com-

parison of the 1965 and 1967 legislation that our legislature intended for all renewals after 1 July 1965 to be subject to an annual rental of $5 per acre per year. We hold that our legislature effectively raised the rental rate for oyster and clam bottoms for renewals subsequent to 1 July 1965. The rental increase is effective provided that the renewal in question is not a first renewal under a lease similar to the one in question, in which event the rental could not be raised by the State until the lessee attempted to exercise a renewal for a second term. In the instant case, the lessee had already exercised his first and second renewals and a third renewal was therefore in the discretion of the State. Since no lease was existing at the time, the State had the right to give effect to the statute and request an increase in the rental rate from the plaintiff.

For the reasons stated above, the decision of the trial court is

Affirmed.

Judges VAUGHN and CLARK concur.