OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS


June 22, 2000

The Honorable Bill Ratliff
Chair, Senate Finance Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. JC-0237

Re: Whether an oyster-bed lease authorized by chapter 76 of the Parks and Wildlife Code is a perpetual lease or an annual lease, and related questions (RQ-0163-JC)

Dear Senator Ratliff:

You ask a number of questions regarding oyster-bed leases under chapter 76 of the Parks and Wildlife Code. Because you do not ask about any particular lease or situation, we answer your questions in general terms and only with reference to chapter 76. We conclude that a chapter 76 oyster-bed lease is a periodic, year-to-year lease that may be terminated at the end of any lease year by giving reasonable notice of the termination; it is not a perpetual lease. We also conclude that an oyster-bed leaseholder is authorized to sell or convey the oyster-bed lease, and that the lease does not expire when the leaseholder dies. Additionally, chapter 76 does not prohibit a family member or family business partner from acting as an agent for other leaseholders; rather it proscribes the "control" of more than 100 acres of submerged land by the same person. No person may exercise power or authority over more than 100 acres of submerged land pursuant to one or more oyster-bed leases. Finally, we conclude that control of more than 100 acres of land covered by water pursuant to another person's oyster-bed lease is not a "lease-breaking condition" that allows the state to cancel the lease by which such control is exercised.

Your first series of questions pertains to the terms and conditions of an oyster-bed lease:

> In a lease between the state and an individual, does the absence of a stated term of the lease grant that leasehold in perpetuity, or does a lessee's payment of annual rent on leased lands render the lease an annual one? If the state, at some point in the future, revokes or renegotiates terms of these leases, will it owe compensation for lost property rights to these leaseholders? If the leasehold is indeed granted in perpetuity, does the leaseholder have an unlimited right to sell or convey the lease? Does the lease expire when the leaseholder dies, or can it be conveyed to heirs?

Letter from Honorable Bill Ratliff, Chairman, Senate Finance Committee, Texas State Senate, to the Honorable John Cornyn, Texas Attorney General, at 1 (Dec. 15, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"].

Before addressing your specific questions in detail, we review the statutes regarding oyster-bed leases. All beds and bottoms and the products of the beds and bottoms of bays and inlets in this state and that part of the Gulf of Mexico within the jurisdiction of the state are state property. *See* TEX. PARKS & WILD. CODE ANN. § 1.011(c) (Vernon 1991). The state may permit use of the waters and the bottoms and taking of products therefrom. *See id.* The Parks and Wildlife Department (the "Department"), a state agency, is directed to regulate the taking and conservation of all forms of marine life and shells, and to administer the laws relating to fish, oysters, and marine life in accordance with the Parks and Wildlife Code (the "Code"). *Id.* §§ 1.011(d), 11.001, 12.001(a); *see also* 31 TEX. ADMIN. CODE ch. 58 (1999) (Oyster and Shrimp). Chapter 76 of the Code deals with oyster-bed leases and is the codification of various statutes enacted in 1919 and earlier. *See* Act of July 21, 1919, 36th Leg., 2d C.S., ch. 73, 1919 Tex. Gen. Laws 191; Act of May 30, 1975, 64th Leg., R.S., ch. 545, subtit. D, 1975 Tex. Gen. Laws 1405, 1568. Under chapter 76, an oyster bed or reef, other than a natural oyster bed, is subject to "location" by the Department. *See* TEX. PARKS & WILD. CODE ANN. § 76.003 (Vernon 1991); *see also id.* §§ 76.001("A natural oyster bed exists when at least five barrels of oysters are found within 2,500 square feet of any position on a reef or bed."), 76.004(c) (natural oyster bed, bay shore area within 100 yards of shore, area subject to riparian rights, and area already under certification as location are not subject to location). Any United States citizen or domestic corporation may apply for a certificate authorizing the applicant to plant oysters and make a private oyster bed at a described location. *See id.* § 76.006(a), (b). If the location is subject to certification, *see id.* § 76.009, the Department must issue a certificate that describes the location by metes and bounds and with reference to compass points and natural objects, *see id.* § 76.012.

Chapter 76 provides little guidance as to the nature, terms, or conditions of an oyster-bed location certification. Only section 76.017 deals to a limited extent with the terms and conditions of an oyster-bed location certification, referring to it as a "lease" and providing that:

> (a) No rental fee is owed on any location when oysters are not sold or marketed from the location for a period of five years after the date of the establishment of the location.

> (b) When oysters are sold or marketed from the location and thereafter, the holder of the certificate shall pay to the department $3 per acre of location per year. In lieu of that payment, the commission may set the required payment under this section in a greater amount.

> (c) Rental fees are due annually by March 1.

> (d) The failure to pay any rental when due terminates the *lease*.

*Id.* § 76.017 (emphasis added); *see also* 31 TEX. ADMIN. CODE § 58.30 (1999) (Private Oyster Leases). While section 76.017(b) allows the Department to set a higher rental than $3 per acre per year, the Department has not done so. *See* 31 TEX. ADMIN. CODE § 58.30(d)(5)(B) (1999). The Department's rules track the statutory rental provisions with one exception. Section 58.30(d)(5)(E) of the Department rules provides that "[i]f oysters from the lease are not sold or marketed within five years from the date of establishment of the lease, the lease is void." *Id.* § 58.30(d)(5)(E). Section 76.017 does not specifically state the type of leasehold interest created by an oyster-bed lease, i.e., whether it is annual or perpetual. Moreover, we have found no Texas cases construing a chapter 76 oyster-bed lease.

Based on the limited provisions of section 76.017 of the Code, we conclude that an oyster-bed lease authorized under chapter 76 is a periodic, year-to-year lease that is terminable at the end of any lease year with reasonable notice. At common law, there are four kinds of tenancies, classified as follows: (1) tenancy for a definite term or term for years; (2) periodic tenancy, as from year-to-year or month-to-month; (3) tenancy-at-will; and (4) tenancy at sufferance. *See generally* 49 TEX. JUR. 3D *Landlord and Tenant* §§ 24-27 (1986); RESTATEMENT (SECOND) OF PROPERTY §§ 1.4, 1.5, 1.6 (1977). The classification is important because it determines the incidences of a tenancy. *See generally* 49 TEX. JUR. 3D *Landlord and Tenant* §§ 24-27 (1986); RESTATEMENT (SECOND) OF PROPERTY §§ 1.4, 1.5, 1.6 (1977). To classify the oyster-bed lease, we look at its terms under section 76.017. No rent is required for a five-year period if no oysters are sold or marketed from that location; and the lease terminates at the end of that period if no oysters are sold or marketed. *See* TEX. PARKS & WILD. CODE ANN. § 76.017(a), (b) (Vernon 1991); 31 TEX. ADMIN. CODE § 58.30(d)(5)(E) (1999). As soon as oysters are sold and marketed, a leaseholder must pay annual rent by March 1, even during the initial five-year period; otherwise the lease terminates. *See* TEX. PARKS & WILD. CODE ANN. § 76.017(c), (d) (Vernon 1991). Once oysters are sold and marketed, section 76.017 thus provides for periodic rent and termination of the lease *if* the rental is not paid by March 1, but it does not provide for an absolute lease termination date or the number of annual periods for which the lease may be held. The duration of the lease is uncertain. A lease for an uncertain duration that requires periodic rent creates a periodic tenancy. *See Panola County Appraisal Review Bd. v. Pepper,* 936 S.W.2d 10, 12 (Tex. App.–Texarkana 1996, no writ) ("Periodic tenancies are those where the agreement provides no fixed term, but is for period to period at the will of the lessor or lessee."); RESTATEMENT (SECOND) OF PROPERTY § 1.5 cmt. d (1977) (parties may expressly provide for periodic tenancy, agreement may be apparent from circumstances, or where no duration is stated but periodic rent is reserved, periodic tenancy is presumed).

Our construction of a chapter 76 oyster-bed lease as a periodic, year-to-year lease is supported by Texas case law dealing with leases generally. By way of background, an at-will tenancy is one that is terminable at the will of either party to the lease at any time, *see Holcombe v. Lorino,* 79 S.W.2d 307, 310 (Tex. 1935); RESTATEMENT (SECOND) OF PROPERTY § 1.6 cmt. a (1977); and a lease for an uncertain term is prima facie an at-will lease, *see Holcombe,* 79 S.W.2d at 310. Where parties enter into a lease of uncertain duration, but periodic rent is required or paid, Texas courts – conflating a tenancy-at-will and a periodic tenancy – characterize the arrangement

as an "at-will lease," but one that establishes a tenancy from month-to-month or year-to-year and is terminable at the end of the specified period "at the will" of either party. *See, e.g., Virani v. Syal*, 836 S.W.2d 749, 751-52 ((Tex. App.–Houston [1st Dist.] 1992, writ denied); *Sellers v. Spiller*, 64 S.W.2d 1049, 1051 (Tex. Civ. App.–Austin 1933, no writ); *Hill v. Hunter*, 157 S.W. 247 (Tex. Civ. App.–Austin 1913, writ ref'd)); *but see* RESTATEMENT (SECOND) OF PROPERTY § 1.5 cmt. d (1977) ("Where the parties enter into a lease of no stated duration and periodic rent is reserved or paid, a periodic tenancy [rather than a tenancy at will] is presumed."). In *Virani v. Syal*, for example, the court considered a lease where the parties did not agree to the lease term, but agreed on a rent of $800 per month. *See Virani*, 836 S.W.2d at 750. The *Virani* court held that the tenants "were tenants at will occupying the property on a month-to-month basis." *Id.* at 752. Similarly, in *Sellers v. Spiller*, the court stated with respect to an agreement to lease at a specified monthly rental, but for an unspecified time, "[s]uch contracts have uniformly been held to be merely tenancies from month to month, subject to termination by either party upon reasonable notice to the other." *Sellers*, 64 S.W.2d at 1051. Finally, in *Hill v. Hunter*, the court determined that a lease for an uncertain term after expiration of an annual holding, was "a mere tenancy at will; and that in the present case, where there was a holding over[,] under the former annual holdings, and the rent payable annually, the tenancy was from year to year, terminable at the end of any year at the will of either party." *Hill*, 157 S.W. at 253. In sum, under these cases, a lease of uncertain duration, but that requires periodic payment, is both a periodic tenancy because it is a "year-to-year" or "month-to-month" tenancy terminable only at the end of the particular period *and* an at-will tenancy because it may still be terminated "at the will" of either party.

The Texas courts' conflation of at-will and periodic tenancies is relevant for our purposes because it has implications for the lessee's right to notice of termination. A periodic tenancy is differentiated at common law from other tenancies by the notice requirement: "[The periodic tenancy] was developed by the English judges for purpose of relieving the injustice resulting from the power of both the landlord and the tenant to summarily terminate the tenancy at will. ... The implication in law of an agreement to give notice to terminate the tenancy was the vehicle by which the courts sought to remove the old injustices of the tenancy at will. This requirement of notice was a distinguishing factor between the year to year tenancy and the other tenancies." *See generally* Edward G. Northcut, *Creation and Termination of Periodic Tenancies*, 15 BAYLOR L. REV. 329 (1963) (footnotes omitted). But with respect to the Texas case law, it has been noted that: "As to year to year tenancies it seems to be the law in Texas, that a year to year tenancy terminates 'at the end of each year at the will of either party.' Evidently no notice is required to terminate a year to year tenancy and either party may end this tenancy, presumably, at the end of any year he desires." *Id.* at 338 (footnotes omitted).

No Texas case, however, has specifically addressed the notice requirement for a year-to-year tenancy. *Sellers v. Spiller*, dealing specifically with the sufficiency of notice to terminate a month-to-month tenancy appears to adopt the common-law rule that such tenancy may be terminated only upon reasonable notice: "it appears that [notice to vacate] was not given within a reasonable time of the date on which Spiller sought to terminate his tenancy. In contracts from month to month, a month's notice in advance of intention to vacate, where time of notice is not prescribed by statute

nor by the terms of the contract, has been held to be a reasonable time." *Sellers*, 64 S.W.2d at 1051 (citations omitted). A more recent Texas Supreme Court case, *Bockelmann v. Marynick*, 788 S.W.2d 569, 571 (Tex. 1990), suggests that notice may be required when a lease does not have a definite duration. The *Bockelmann* court concluded that a notice was not required to terminate the tenancy at issue stating: "The lease created a tenancy for a definite term (a tenancy with a specified beginning and ending date). The general rule is that a tenancy for a definite term does not require a tenant to give notice in order to terminate the tenancy, because a tenancy for a definite term simply expires at the end of the contract period." *Bockelmann*, 788 S.W.2d at 571.

We believe that a termination notice is required to terminate a periodic, year-to-year oyster-bed lease because its ultimate duration is uncertain.[1] *Cf. Bockelmann*, 788 S.W.2d at 571(lease for definite term, with a beginning and ending date, does not require termination notice because tenancy for definite term simply expires at end of the lease term). If rental is paid by March 1, the lease continues for an additional year and there is no statutory limit to the number of years for which it may be so continued. There is no final lease ending date because the annual period does not define the duration of the lease. Thus, although the lease terminates upon failure to pay the annual rent, and it is *terminable* at the end of any lease year, the particular year in which it will terminate is unknown. Notice in these circumstances is not only reasonable, but necessary to protect the lessee. We believe a Texas court confronted with this issue would follow the common-law rule requiring notice to terminate a year-to-year lease. *See Sellers*, 64 S.W.2d at 1051 (adopting common-law rule that *reasonable* notice equal to one month required to terminate a month-to-month tenancy); RESTATEMENT (SECOND) OF PROPERTY § 1.5 cmt. f (1977) (if no notice of termination is given, periodic lease will continue for another period). At common law, a six-month notice was required to terminate a periodic year-to-year lease, but a shorter "reasonable" period may be sufficient. *See* RESTATEMENT (SECOND) OF PROPERTY § 1.5 cmt. f (1977).

A chapter 76 oyster-bed lease, in our opinion, is not a lease for one year or a definite term such as would not require notice of termination. A lease creates a tenancy for a definite term if the tenancy has a specified beginning and ending date. *See Bockelmann*, 788 S.W.2d at 571 ("The lease [for a twelve-month term ending on February 28, 1985] created a tenancy for a definite term (a tenancy with a specified beginning and ending date)."); *accord* RESTATEMENT (SECOND) OF PROPERTY § 1.4 cmt. a (1977) ("A lease is for a fixed period of time when it specifies its beginning date and its termination date as calendar dates. A lease is for a computable period of time when it specifies a formula for determining the beginning and termination dates."). Again, chapter 76 does not provide an ending date for the oyster-bed lease: if rental is paid by March 1, the lease continues for an additional year and there is no statutory limit to the number of years for which it may be so continued.

---

[1]Notice to terminate a month-to-month tenancy is no longer an issue because it is specifically required by statute. *See* TEX. PROP. CODE ANN. § 91.001 (Vernon 1995) (specifying notice for termination of tenancies from month-to-month or periodic tenancies).

Neither is a chapter 76 oyster-bed lease, in our opinion, a perpetual lease. Perpetual leases are not favored by Texas courts, and a lease will not be construed to create a perpetual leasehold interest unless the intent to create such interest is evidenced by clear and unequivocal language. *See Philpot v. Fields*, 633 S.W.2d 546, 548 (Tex. Civ. App.–Texarkana 1982, no writ); *Hull v. Quanah Pipeline Corp.*, 574 S.W.2d 610, 611-12 (Tex. Civ. App.–San Antonio 1978, writ ref'd n.r.e.); *Oglesby v. McCoy*, 255 S.E.2d 773, 776 (N.C. Ct. App. 1979). In *Philpot v. Fields*, the court considered a lease for a term of twenty years "and so long thereafter as the lessee . . . may use the premises for the purpose of maintaining and operating a LTX separator . . . in connection with processing, refining, treating, and storing natural gas." *Philpot*, 633 S.W.2d at 547. The *Philpot* court determined that the lease created a perpetual lease as long as the land was used for the stated purpose. *See id.* at 548. The court distinguished its case from the line of Texas cases finding tenancy-at-will when the lease term is uncertain on the grounds that (1) those cases did not involve a complete, written lease clearly expressing the parties' intent and (2) those cases did not tie the agreement's termination to a definite, ascertainable use of the land. *See id.* But the court also stated that it would not apply the rationale of the earlier cases even if they were not distinguishable because the lease in question was "specific in expressing rights, obligations, and duties of the parties" and that:

> Although there is no definite ending date after the 20 year term, that date is tied to the cessation of the use of the land for certain definitely ascertainable purposes. . . . It appears that the parties intended to create a perpetual right to lease the land. When the parties' intent is made clear, courts should enforce the agreement as written, even though perpetual rights are not favored.

*Id.*

While we are not convinced that *Philpot* correctly states the law, a chapter 76 oyster-bed lease is distinguishable from the *Philpot* lease. We do not have before us the language of a particular oyster-bed lease, but we note that such a lease is a creature of chapter 76. Chapter 76 does not evidence a clearly expressed intent to authorize a perpetual leasehold interest. *See also Oglesby*, 255 S.E.2d at 775-77 (holding that oyster-bed lease did not provide clearly and unambiguously for perpetual renewal where no language in lease or in statute indicated an instrument in perpetuity). Oyster beds are the property of the state, of which the state may allow the use by private persons. *See* TEX. PARKS & WILD. CODE ANN. § 1.011(c) (Vernon 1991). They are also natural resources that the state has an interest in protecting and regulating. *See* Act of July 21, 1919, 36th Leg., 2d C.S. ch. 73, 1919 Tex. Gen. Laws 191(the Act, among other things, is for the protection of oyster and marine life, to protect natural oyster beds, and provide for location of private oyster beds) (caption). Given the state's vested interest in oyster beds and the significance of alienating state property by granting a perpetual interest therein tantamount to a fee title, we believe that if the legislature intended an oyster-bed lease to be perpetual, it would have expressly and unambiguously so provided. Accordingly, we determine that chapter 76 does not authorize a perpetual oyster-bed lease.

Furthermore, because chapter 76 does not authorize a perpetual leasehold interest, the Department may not enter into or provide for a perpetual lease. The Department, like any state agency, is a legislative creature and possesses only such powers as are delegated to it expressly and impliedly by the legislature. *State v. Jackson*, 376 S.W.2d 341, 344 (Tex. 1964); *Texas Parks & Wildlife Dep't v. Callaway*, 971 S.W.2d 145, 148 (Tex. App.–Austin 1998, no pet.). Specifically, the Department may regulate taking of marine life and administer the laws relating to oysters only in accordance with the Code. TEX. PARKS & WILD. CODE ANN. §§ 1.011(d), 11.001, 12.001(a) (Vernon 1991). Chapter 76 does not expressly provide for a perpetual lease. And because the intent to create a perpetual lease must be evidenced by clear and unequivocal language, such authority may not be implied.

You also ask in your first series of questions: "If the state, at some point in the future, revokes or renegotiates terms of these leases, will it owe compensation for lost property rights to these leaseholders?" Request Letter at 1. While not completely clear, you appear to ask about possible, unspecified claims of unconstitutional "taking" of unspecified vested rights under an oyster-bed lease contract arising from unspecified actions taken by the state, assuming the oyster-bed leases are perpetual. In view of our conclusion that a chapter 76 oyster-bed lease is not a perpetual lease, we do not address this question. Moreover, we note that such a determination cannot be made in the abstract, dependent as it is on, among other considerations, the particular actions complained of taken by the state, the legal theory of the taking claim, and the particular property interest affected. *See, e.g.*, *State v. Operating Contractors*, 985 S.W.2d 646 (Tex. App.–Austin 1999, pet. denied) (discussing necessary elements of claim of constitutional "taking" based on legislative change affecting contractual right); *Callaway*, 971 S.W.2d 145 (discussing claim of inverse condemnation of contractual property easement); *Bryant v. Hogarth,*, 488 S.E.2d 269 ( N.C. Ct. App. 1997) (discussing timing of government regulation as affecting taking claim relating to franchise to cultivate shellfish); *Working Waterman's Ass'n of Va., Inc. v. Seafood Harvesters, Inc.*, 314 S.E.2d 159 (Va. 1984) (looking at whether statute complained of in fact substantially impaired oyster and clam planting contract rights); *Oglesby*, 255 S.E.2d at 773 (looking at timing of legislative change increasing rental for oyster-bed lease in regard to claim of impairment of contract).

You additionally ask in your first series of questions whether a leaseholder has an "unlimited" right to sell or convey the lease or whether the lease expires on the death of the leaseholder. *See* Request Letter at 1. These questions also appear to be premised on a conclusion that an oyster-bed lease creates a perpetual leasehold interest. However, we do not believe that these questions arise only in the context of a perpetual lease.

We first conclude that chapter 76 implicitly authorizes an oyster-bed leaseholder to sell or convey an oyster-bed leasehold interest. Section 76.039 of the Code, which prohibits certain acts relating to oyster-bed locations, provides as follows: "This section does not affect the right of a person to sell or assign an oyster location or private bed." TEX. PARKS & WILD. CODE ANN. § 76.039(b) (Vernon 1991). By its terms, this provision clearly assumes that the right to sell or convey oyster-bed leases exists and reiterates that this right continues. We find no express restrictions in chapter 76 on a leaseholder's right to sell or convey an oyster-bed lease. Of course, the leaseholder cannot convey any more interest than the leaseholder has under the lease. *Cf.*

*Shipman v. Mitchell*, 64 Tex. 174 (1885) (person who acquired unexpired term of lease from original lessee bound by time of expiration agreed to in original contract).

We conclude second that a chapter 76 oyster-bed lease does not expire on the death of the leaseholder. Again, no provision in chapter 76 addresses this issue, but under the common law, a periodic tenancy does not terminate on the death of the leaseholder. RESTATEMENT (SECOND) OF PROPERTY § 1.5 cmt. f (1977) ("The death of one party to a periodic tenancy does not terminate the lease."); *see also Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971) (three-year lease did not terminate on lessee's death but constituted community asset and vested in widow and heir, citing *Wilcox v. Alexander*, 32 S.W. 561 (Tex. Civ. App. 1895, no writ)); *Wilcox*, 32 S.W. at 561 (as a general rule, lease is not extinguished at death and upon death of lessee, lease in question became part of estate). In contrast, a tenancy-at-will under the common law terminates on the death of the leaseholder. *See McNeely v. Southwestern Settlement & Dev. Corp.*, 282 S.W.2d 932, 935 (Tex. Civ. App.–Beaumont 1955, no writ) (rights of ancestor under tenancy-at-will ended at his death and did not pass to his heirs under statutes of descent and distribution); *accord* RESTATEMENT (SECOND) OF PROPERTY § 1.6 cmt. e (1977) ("The continuance of the tenancy-at-will depends upon the presence of landlord's and tenant's wills that the tenancy continue. The death of either ends the presence of the will of the deceased, thereby bringing the tenancy to an end."). Accordingly, an oyster-bed leasehold interest may be conveyed to a leaseholder's heirs.

In this regard we note that the Texas cases conflating at-will and periodic tenancies when a lease is of uncertain duration, but rent is paid or accepted periodically, *see Virani*, 836 S.W.2d at 749; *Hill*, 157 S.W. at 247, are problematic. This is so because it is unclear whether an "at-will" lease that nevertheless creates a "periodic tenancy," is an at-will lease that terminates with the death of the lessee, or a periodic tenancy that does not. We believe, a court confronted with this issue, would follow the common-law position of the *Restatement of Property* and treat the hybrid lease as creating a periodic tenancy that does not end when the lessee dies.

Your next three questions pertain to the meaning and consequences of "control" of more than 100 acres of submerged land that is prohibited by section 76.007 of the Code:

> When a family member or family business partner acts as an agent for several oyster bed leaseholders, does that violate Parks and Wildlife Code, Sec. 76.007 . . . ? What constitutes 'control'? If it is proven that individuals do indeed control more than 100 acres at a time, is that a lease-breaking condition?

Request Letter at 2.

Section 76.007 of the Code provides that: "No person may own, lease, or control more than 100 acres of land covered by water under certificates of location." TEX. PARKS & WILD. CODE ANN. § 76.007 (Vernon 1991). But neither section 76.007 of the Code nor another provision provides a remedy for a violation of section 76.007.

With respect to your first question, neither section 76.007, or any other provision we have found prohibits a family member or family business partner from acting as an agent for other oyster-bed leaseholders. Section 76.007 does not prohibit an agency relationship. Rather, it proscribes "control" of more than 100 acres of submerged land by the same person pursuant to an oyster-bed lease.

Neither section 76.007 nor another provision defines "control." When the legislature fails to define a word or term, we must ascribe to the word or term its ordinary meaning. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993); *see also* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998) (statutory words and phrases are to be read in context and construed according to common usage unless they have acquired technical or particular meaning). The ordinary meaning of "control," in the present context, is "to exercise power or authority over." III OXFORD ENGLISH DICTIONARY 853 (2d ed. 1989); *see also* BLACK'S LAW DICTIONARY 330 (7th ed. 1999) ("To exercise power or influence over."); *accord American Fidelity & Cas. Co. v. Traders & Gen. Ins. Co.*, 334 S.W.2d 772, 775 (Tex. 1959) ("control" means "'[p]ower or authority to manage, direct, govern, administer, or oversee.'"). Ascribing this meaning to "control" as used in section 76.007 of the Code, we determine that no person may exercise power or authority over more than 100 acres of submerged land pursuant to one or more oyster-bed leases. Whether a particular person exercises power and authority over submerged lands in excess of 100 acres pursuant to one or more oyster-bed leases requires investigation and resolution of fact questions, which cannot be done in an attorney general opinion.[2]

While control of more than 100 acres of land under water pursuant to an oyster-bed lease is prohibited, we do not believe it is a "lease-breaking condition" that allows the state to cancel a lease by which such control is exercised for the following reasons. Texas courts generally do not favor conditions or limitations, the violation of which results in the termination of a leasehold interest. *See Sirtex Oil Indus., Inc. v. Erigan*, 403 S.W.2d 784, 787 (Tex. 1966); *Hearne v. Bradshaw*, 312 S.W.2d 948, 951 (Tex. 1958); *Henshaw v. Texas Natural Resources Found.*, 216 S.W.2d 566, 570 (Tex. 1949); *Johnson v. Gurley*, 52 Tex. 222, 224 (Tex. 1879). At common law, a lessee does not forfeit his or her lease for using the "premises" for an unlawful purpose in the absence of a provision in the lease contract permitting a forfeiture in such a case. *See, e.g., Wilson v. Boyd*, 556 S.W.2d 121, 124 (Tex. Civ. App.–Eastland 1977, no writ); *Moore v. Kirgan*, 250 S.W.2d 759, 767 (Tex. Civ. App.–El Paso 1952, no writ). *See generally* Annotation, *Lease Provisions Allowing Termination or Forfeiture for Violation of Law*, 92 A.L.R. 3d 967 (1979 & Supp. 1999). Accordingly, absent such a forfeiture provision in the lease, a lessor may not cancel a lease for a violation of the law unless a statute expressly provides for the forfeiture. *See Moore*, 250 S.W.2d at 767. In the present case, we presume that an oyster-bed lease does not contain a provision that allows the state to cancel the lease for a violation of section 76.007. Additionally, section 76.007 does not authorize termination of a lease for violation of that section. *Compare* TEX.

---

[2]*See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 ("[I]nvestigation and resolution of fact question[ ] . . . cannot be done in the opinion process."); DM-98 (1992) at 3 ("[Q]uestions of fact . . . cannot be resolved in the opinion process."); O-2911(1940) at 2 ("Whether [buildings are owned and used exclusively for school purposes] presents a fact question which we are unable to answer." ).

PARKS AND WILD. CODE ANN. § 76.007 (Vernon 1991), *with id.* § 76.017 (d) (Vernon 1991) (failure to pay rent when due will terminate lease).

Additionally, with respect to a contract that is not on its face illegal, determining whether the contract violates a statute requires looking at the specific facts of the case and the intention of the parties in executing the contract. *See Texas Employers' Ins. Ass'n v.Tabor*, 283 S.W. 779, 780 (Tex. Comm'n App. 1926, judgm't adopted); *Peniche v. Aeromexico*, 580 S.W.2d 152, 156 (Tex. Civ. App.–Houston [1st Dist.] 1979, no writ ). While it is the general rule that a Texas contract made in violation of the express provisions of a state statute, or one that cannot be performed without such violation, is void and unenforceable, where the illegality does not appear on the face of the contract it will not be held void unless the facts showing its illegality are before the court. *See Lewis v. Davis*, 199 S.W.2d 146, 148-49 (Tex. 1947); *Texas Employers' Ins. Ass'n*, 283 S.W. at 780; *Peniche*, 580 S.W.2d at 156. Furthermore, a contract that could have been performed in a legal manner will not be declared void because it may have been performed in an illegal manner. *Lewis*, 199 S.W.2d at 149.

In the present case, it is not clear to us that any illegality, i.e., violation of section 76.007, appears on the face of an oyster-bed lease. Clearly, a person who controls 100 acres of land under water pursuant to an oyster-bed lease is ineligible to control additional locations under section 76.007 through a lease in his or her name. And the Department does not, we assume, grant a lease to a person who already leases or controls 100 acres pursuant to an oyster-bed lease given section 76.007's proscription. Consequently, we presume that control over more than 100 acres is acquired or exercised through a lease in another person's name, and the lease that "violates" section 76.007 is with a person other than the "violator" of the statute, i.e., the person controlling more than 100 acres of submerged land. Thus, a lease by which control over more than 100 acres is exercised would not on its face show a violation of section 76.007. To support a termination of such a lease for violation of section 76.007 and prevail, the state would have to show a court facts and intentions surrounding the questionable lease establishing its illegality when it was executed.

## S U M M A R Y

An oyster-bed lease authorized under chapter 76 of the Parks and Wildlife Code is a periodic, year-to-year lease that may be terminated at the end of any lease year by the state after giving reasonable notice of termination. A chapter 76 oyster-bed lease does not create a perpetual leasehold interest. An oyster-bed leaseholder is authorized to sell or convey the oyster-bed lease. The lease does not expire on the death of the leaseholder. Chapter 76 does not prohibit a family member or family business partner from acting as an agent for other leaseholders; rather it proscribes the "control" of more than 100 acres of submerged land by the same person. No person may exercise power or authority over more than 100 acres of submerged land pursuant to one or more oyster-bed leases. Control over more than 100 acres of land covered by water pursuant to another person's oyster-bed lease is not a "lease-breaking condition" that allows the state to cancel the lease by which such control is exercised.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General - Opinion Committee